# **Exhibit A**

 CT Corporation 

**Service of Process Transmittal**
12/03/2012
CT Log Number 521707352



| | |
|---|---|
| **TO:** | HARRY L GOLDSMITH<br>AutoZone, Inc.<br>123 South Front St.<br>Memphis, TN 38103-3607 |

**RE:** **Process Served in Tennessee**

**FOR:** AUTOZONE, INC. (Domestic State: NV)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Amanda L. Thomas, Pltf. vs. Autozone, Inc. and Autozoners, LLC., Dfts. |
| **DOCUMENT(S) SERVED:** | Letter, Summons, Return of Service, Verified Complaint, Verification, Exhibit, Certificate of Service |
| **COURT/AGENCY:** | Shelby County Circuit Court - Thirtieth Judicial District, TN<br>Case # CT00503312 |
| **NATURE OF ACTION:** | Employee Litigation - Discrimination - Wrongful termination of employment on basis of gender discrimination on July 29, 2011 |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Knoxville, TN |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 12/03/2012 postmarked on 11/29/2012 |
| **JURISDICTION SERVED:** | Tennessee |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service, not counting the day of you received it |
| **ATTORNEY(S) / SENDER(S):** | William A. Young<br>2820 Summer Oaks Dr.<br>Bartlett, TN 38134<br>901-388-9832 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via Fed Ex 2 Day , 794207378226<br>Email Notification, Pam Butler PAM.BUTLER@AUTOZONE.COM |
| **SIGNED:**<br>**PER:**<br>**ADDRESS:** | C T Corporation System<br>Amy McLaren<br>800 S. Gay Street<br>Suite 2021<br>Knoxville, TN 37929-9710 |
| **TELEPHONE:** | 800-592-9023 |

Page 1 of 1 / PV

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

# DOUGLASS & RUNGER

ATTORNEYS AT LAW
AN ASSOCIATION OF ATTORNEYS • NOT A PARTNERSHIP

2820 SUMMER OAKS DRIVE
BARTLETT, TN 38134

EUGENE G. DOUGLASS: 901 388-5804
CURTIS A. RUNGER: 901 388-5805

FAX NUMBER: 901 372-8264
egdouglass@bellsouth.net
crunger@bellsouth.net

November 29, 2012

VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED

AUTOZONE, INC
AUTOZONERS, LLC
C/O its Registered Agent
CT CORPORATION SYSTEM
800 S. Gay St., Ste. 2021
Knoxville, TN 37929

**RE:   AMANDA L. THOMAS v. AUTOZONE, INC and AUTOZONERS, LLC**

To Whom It May Concern:

Please find attached a copy of the Verified Complaint for Damages I filed against
AutoZone, Inc. and AutoZoners, LLC in Shelby County, TN. If you have any questions
or would like to discuss this case, please contact me directly. My telephone number is
901-388-9832.

Sincerely yours,

William A. Young, Jr., Esq.

Cc: Amanda Thomas

(CIRCUIT/~~CHANCERY~~) COURT OF TENNESSEE
**140 ADAMS AVENUE, MEMPHIS, TENNESSEE 38103**
**FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS**

## SUMMONS IN CIVIL ACTION

Docket No. *CT-005033-12*

- ○ Lawsuit
- ○ Divorce

Ad Damnum $ _____

| Plaintiff(s) | | Defendant(s) |
|---|---|---|
| Amanda L. Thomas | VS | AutoZone, Inc |

**TO: (Name and Address of Defendant (One defendant per summons))**

AutoZone, Inc
c/o Its Registered Agent
CT Corporation System
600 S. Gay St. Ste 2021
Knoxville, TN 37729

**Method of Service:**
- ○ Certified Mail
- ○ Shelby County Sheriff
- ○ Commissioner of Insurance ($)
- ○ Secretary of State ($)
- ○ Other TN County Sheriff ($)
- ○ Private Process Server
- ○ Other

(S) Attach Required Fees

You are hereby summoned and required to defend a civil action by filing your answer with the Clerk of the Court and serving a copy of your answer to the Complaint on William A. Young, PC. Plaintiff's attorney, whose address is 2820 Summer Oaks Dr. Bartlett TN 38134 telephone 901 388 9832 within THIRTY (30) DAYS after this summons has been served upon you, not including the day of service. If you fail to do so, a judgment by default may be taken against you for the relief demanded in the Complaint.

JIMMY MOORE, Clerk / DONNA RUSSELL, Clerk and Master

TESTED AND ISSUED November 29 2012   By _____, D.C.

### TO THE DEFENDANT:

NOTICE; Pursuant to Chapter 919 of the Public Acts of 1980, you are hereby given the following notice:
Tennessee law provides a four thousand dollar ($4,000) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the Clerk of the Court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed. These include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

FOR AMERICANS WITH DISABILITIES ACT (ADA) ASSISTANCE ONLY, CALL (901) 379-7895

I, JIMMY MOORE / DONNA RUSSELL, Clerk of the Court,
Shelby County, Tennessee, certify this to be a true and
accurate copy as filed this

_____

JIMMY MOORE, Clerk / DONNA RUSSELL, Clerk and Master

By: _____, D.C.

RETURN OF SERVICE OF SUMMONS

I HEREBY CERTIFY THAT I **HAVE** SERVED THE WITHIN SUMMONS:

By delivering on the _____ day of _____, 20_____ at _____ M. a copy of the summons

and a copy of the Complaint to the following Defendant _____

at _____

By: _____

Signature of person accepting service                                    Sheriff or other authorized person to serve process

RETURN OF NON-SERVICE OF SUMMONS

I HEREBY CERTIFY THAT I **HAVE NOT** SERVED THE WITHIN SUMMONS:

To the named Defendant _____

because _____ is (are) not to be found in this County after diligent search and inquiry for the following

reason(s): _____

This _____ day of _____, 20_____.

By: _____

Sheriff or other authorized person to serve process

## IN THE CIRCUIT COURT OF TENNESSEE
## FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

| | |
|---|---|
| AMANDA L. THOMAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No: CT-005033-12 |
| | ) Division IV |
| v. | ) **JURY DEMAND (12)** |
| | ) |
| | ) |
| AUTOZONE, INC. | ) |
| | ) |
| And | ) **FILED** |
| | ) NOV 29 2012 |
| AUTOZONERS, LLC. | ) CIRCUIT COURT CLERK |
| | ) BY_____D.C. |
| | ) |
| Defendants. | ) |
| | ) |

## VERIFIED COMPLAINT FOR DAMAGES

TO THE HONORABLE JUDGES OF THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE:

COMES NOW, the Plaintiff, Amanda L. Thomas, by and through her undersigned counsel, and for her Verified Complaint for Damages against the Defendants would state as follows:

### JURISDICTION AND VENUE

1.     The Plaintiff, Amanda L. Thomas, (hereinafter "Plaintiff") is a resident and citizen of Hernando, DeSoto County, Mississippi.

2.     The Defendants, AutoZone, Inc., and AutoZoners, LLC, (hereinafter "Defendants") are foreign corporations authorized to be and doing business in

1

Memphis, Shelby County, Tennessee, wherein the allegations set forth in this complaint occurred. The Defendants may be served by and through their registered agent, C T Corporation System, 800 S. Gay St., Ste. 2021, Knoxville, Tennessee, 37929.

3. Jurisdiction in this matter is proper because the events giving rise to this matter took place in Memphis, Shelby County, Tennessee, at the Defendants' facility located at 123 S. Front St. Memphis, TN 38103.

## FACTS

4. The Defendants are corporate entities that operate a nationwide automotive parts and accessories retail store chain that employs fifteen (15) or more employees.

5. The Plaintiff is a married thirty-six (36) year old Caucasian female.

6. The Plaintiff began her employment with the Defendants on or about March 15, 2004 as a Central Station Alarm Coordinator in the Defendants' Loss Prevention department.

7. The Defendants terminated the Plaintiff on July 29, 2011.

8. At the time of her termination, the Plaintiff was employed as an Alarm Specialist Supervisor.

9. When the Plaintiff was terminated, she was the only female supervisor in Defendants' Loss Prevention department.

10. In or around October of 2008, the Defendants placed Patrick Barker into the Central Station Manager position in the Loss Prevention department.

2

11.     Beginning with Mr. Barker's arrival in 2008 and continuing through the Plaintiff's termination in July of 2011, the Plaintiff was singled out and subjected to a hostile workplace, sexual harassment, and gender discrimination perpetrated by Mr. Barker, which included sexually suggestive comments, sexually explicit comments, discriminatory comments, and crude comments.

12.     Beginning in 2009, Mr. Barker publicly and repeatedly called the Plaintiff "hormonal" while the Plaintiff was pregnant and made other derogatory comments related to the Plaintiff's pregnancy's effect on her productivity and decision making ability.

13.     At all times relevant as set forth herein, the sexual harassment from Mr. Barker was so severe and pervasive, traumatic, continuous and repetitive, as to create a hostile work environment which affected the terms, conditions, and/or privileges of the Plaintiff's employment with the Defendants.

14.     The discriminatory conduct which occurred frequently during the Plaintiff's employment by the Defendants was so severe in nature and was so humiliating, traumatic, embarrassing and offensive that it unreasonably interfered with the Plaintiff's work performance.

15.     In the workplace, Mr. Barker called into question and minimized all of the Plaintiff's suggestions, ideas, contributions and decisions, even though he was not the Plaintiff's direct supervisor.

16.     Mr. Barker publicly referred to the Plaintiff as "my secretary" and made other disparaging and derogatory comments about her.

17.     Mr. Barker made public comments about the Plaintiff's suggestions, ideas, contributions and decisions in ways that linked them to the Plaintiff's gender, such as "oh that's a female thing. That's a woman thing. Ya'll just think like that" and "you must be on your rag."

18.     When the Plaintiff was subjected to sexual harassment and discrimination, the Plaintiff rejected and discouraged said inappropriate conduct.

19.     On numerous occasions between October 2008 and July 2011, the Plaintiff reported Mr. Barker's unwanted conduct verbally and in writing to numerous supervisors and Human Resources personnel employed by the Defendants, including but not limited to Director Chuck Bryant, Manager Mark Hicks, Director Jerry Blum, Manager Kelly Kilgore, Human Resources Director David Orabone, Human Resources Manager Hannah Wesson and Human Resources Generalist Ashley Pollock.

20.     The Defendants knew that the Plaintiff was uncomfortable with the hostile work environment, yet the Defendants refused to cease the inflammatory actions.

21.     On one occasion in or around June of 2009, the Plaintiff complained to her supervisor Mr. Hicks that Mr. Barker was berating her workplace decision-making ability on the basis of her gender and pregnancy status, and Mr. Hicks said "well you are pregnant so by definition you are hormonal."

22.     Despite the Plaintiff's numerous written and verbal complaints to multiple managers, supervisors, directors and Human Resources personnel, no action was ever taken against Mr. Barker by the Defendants.

23.     Similarly, no action was taken by the Defendants to keep Mr. Barker away from the Plaintiff.

24.     Instead, the Defendants assigned Mr. Barker to be the Plaintiff's professional mentor.

25.     Mr. Hicks, the Plaintiff's supervisor in early 2010, recommended that the Plaintiff attend the Defendants' SSC New Manager Training Program, which lasted approximately from April to June of 2010.

26.     As part of the SSC New Manager Training Program, the Plaintiff was assigned Mr. Barker as the Plaintiff's professional mentor.

27.     The Plaintiff was uncomfortable being paired with Mr. Barker and requested a different mentor, both to Human Resources specialist Hannah Wesson and Director Chuck Bryant.

28.     Despite the Plaintiff's request to be assigned a new mentor, no new mentor was assigned, and the Plaintiff was forced to continue with Mr. Barker as her mentor in order to complete the SSC New Manager Training Program.

29.     The Plaintiff would further state that she suffered disparate treatment from her co-workers as a result of reporting a hostile workplace, sexual harassment and gender discrimination as other employees were not treated in the same manner.

30.     In June of 2010, Mr. Bryant announced his plan to fill the position vacated by Security Systems Manager Mark Hicks. Mr. Bryant knew of the Plaintiff's interest in the position, which was a more desirable position than the Plaintiff's, encouraged her to apply. Mr. Bryant pulled the Plaintiff into the L3 security room and told the Plaintiff that this was "a private discussion between friends, not

director and employee" and that although he felt the Plaintiff could "do the job," he was concerned about the "dumb hillbilly act." Mr. Bryant said he knew the Plaintiff was smarter than she acted and that if she didn't "reel in the hillbilly nonsense, she would be an embarrassment to the department as a manager which would in turn embarrass him." Before the Plaintiff was allowed to leave, Mr. Bryant told the Plaintiff to never speak of their conversation.

31.     The Plaintiff understood the conversation with Mr. Bryant as criticism on the Plaintiff's gender as well as the Plaintiff's appearance, and she cut her hair short and purchased new clothes.

32.     In July of 2010, the Plaintiff applied for a Security Systems Manager position within her department.

33.     In August of 2010, the Plaintiff interviewed with Mr. Bryant, Ms. Pollock, and Mr. Cary Mills for the Security Systems Manager position she applied for in July of 2010.

34.     In September of 2010, the Defendants awarded the Security Systems Manager position to Kelly Kilgore, a less qualified male employee.

35.     Mr. Kilgore came from Defendants' Maintenance Department, had less of a background in the Defendants' burglar and fire alarm systems than the Plaintiff, had not completed Defendants' SSC New Manager Training Program, had no college degree, and had been employed by the Defendants for three fewer years than the Plaintiff.

36.     Director Chuck Bryant and HR specialist Ashley Pollock told the Plaintiff that she did not get the Security Systems Manager position that went to Mr.

Kilgore because she "needed a female mentor." They did not say why the Plaintiff needed a female mentor.

37.     Within Defendants' Loss Prevention department, the employees were overwhelmingly male. The Plaintiff was the only female in a supervisory or managerial role in the alarm services department of Loss Prevention. Besides the Plaintiff, the only two female employees in the department were Adrienne Fullwood, who the Plaintiff supervised, and Christine McGoldrick, who was the department secretary.

38.     On or about September 2010, after Mr. Kilgore got the Security Systems Manager position, the Plaintiff was assigned a new mentor, Human Resources Manager Hannah Wesson.

39.     Prior to Mr. Kilgore receiving the Security Systems Manager position, the Plaintiff had never been told by anyone that she needed a female mentor in order to receive a promotion.

40.     The Plaintiff met with Ms. Wesson monthly and told Ms. Wesson about Mr. Barker's constant hostility, harassment and discrimination.

41.     Ms. Wesson told the Plaintiff at one of these meetings, "I know, but I will help you get through it. You know how men are. We just have to deal with it."

42.     The Plaintiff was also subjected to a hostile workplace, sexual harassment, and discrimination perpetrated by Mr. Kilgore, the individual who received the job the Plaintiff applied for and did not receive. Mr. Kilgore publicly made derogatory, gender-based comments about the Plaintiff and other women.

43.     Each and every time the Plaintiff was subjected to sexual harassment and discrimination by Mr. Kilgore, the Plaintiff rejected and discouraged said inappropriate conduct.

44.     In January 2011, the Plaintiff confided in an employee outside of the alarm services department about the difficulties she was having with sexual harassment, hostile workplace and discrimination with in the Loss Prevention department. The employee the Plaintiff confided in anonymously filed a report with AutoZoner Relations.

45.     On the basis of the anonymous complaint made to AutoZoner Relations, a Human Relations investigation was initiated in approximately February 2011.

46.     Human Resources Director David Orabone and Human Resources Generalist Ashley Pollock went to the Loss Prevention department and interviewed the Plaintiff about the anonymous complaint in February 2011. Because Mr. Orabone and Ms. Pollock went to Loss Prevention to request a meeting with the Plaintiff, other members of the Loss Prevention department were aware the Plaintiff was meeting with Human Resources representatives.

47.     Mr. Orabone told the Plaintiff that she would not be fired or retaliated against for cooperating with the investigation and that the investigation was confidential.

48.     The Plaintiff described to Mr. Orabone and Ms. Pollock the hostile work environment and constant harassment and discrimination she had been enduring from Mr. Barker and Mr. Kilgore.

49.     Several days later, Ms. Pollock told the Plaintiff that the investigation was complete but did not reveal the outcome of the investigation.

50.     Subsequently, the Plaintiff was subjected to increased job performance scrutiny by her supervisors, including Mr. Blum, Mr. Barker and Mr. Kilgore.

51.     In or around late February of 2011, the Plaintiff was summoned by Director Jerry Blum into Libby Rabun's office. Mr. Blum demanded to know why HR was investigating the alarm services department. The Plaintiff told Mr. Blum that the investigation was confidential and that she could not discuss it. Mr. Blum told the Plaintiff that if she did not tell him what was going on, the Plaintiff was a liar.   The Plaintiff broke down in tears and told Mr. Blum about the HR investigation. The Plaintiff told Mr. Blum that she cooperated with HR because she had previously discussed her problems with Mr. Barker and Mr. Kilgore with Mr. Blum and Mr. Blum had done nothing about it. Mr. Blum was furious about the HR investigation and the Plaintiff's cooperation with HR. Mr. Blum told the Plaintiff to keep this conversation between the Plaintiff and Mr. Blum and to come see Mr. Blum, not HR, from now on.

52.     In April of 2011, the Plaintiff applied for a lateral position, Import Quality Compliance Coordinator, in another company department in an attempt to escape the workplace hostility that existed in the Loss Prevention department. Mr. Kilgore, Mr. Blum and Mr. Barker knew the Plaintiff applied for this position. The Plaintiff was not chosen for this position. The Plaintiff was told that an outside candidate with more experience in the merchandising field was selected for the position.

53.     The Plaintiff's job duties as Alarm Specialist Supervisor included maintaining a database of over seven hundred (700) vendors for Alarm Services as well as negotiating vendor contracts needed to implement and maintain the Defendants' store security systems.

54.     In May of 2011, the Plaintiff asked Mr. Kilgore to communicate his and Mr. Blum's expectations for the Plaintiff and her team. She never got a response from Mr. Kilgore.

55.     The Plaintiff continued to receive conflicting instructions and commands from Mr. Kilgore, Mr. Blum, and Mr. Barker.

56.     At the Plaintiff's request, the Plaintiff met with Mr. Kilgore and Mr. Blum to discuss expectations on how the Plaintiff should deal with vendors in the future and chain of command issues.

57.     On July 22, 2012 the Plaintiff met with Mr. Kilgore and complained about the continuing discrimination, harassment and hostility from Mr. Barker. The Plaintiff asked Mr. Kilgore "when is someone was going to stop Mr. Barker" and Mr. Kilgore told her that he agreed that Mr. Barker was a problem and had been a problem for as long as Mr. Kilgore had been in the department. Mr. Kilgore told the Plaintiff to keep their conversation confidential.

58.     On July 26, 2011 and at the Plaintiff's request, the Plaintiff met with Mr. Kilgore, Mr. Blum, and Mr. Barker. At this meeting, the department's financial problems were discussed. The Plaintiff brought back up her request for expectations and chain of command issues and also discussed problems caused by inexperienced personnel, including Adrienne Fullwood, she was forced by Mr.

Bryant to hire onto her team. During this meeting, Mr. Barker became upset and stormed out of the room.

59.     On July 27, 2011, Keith Ridenaur, Loss Prevention investigator, led a meeting with the Plaintiff, Mr. Barker, and Mr. Kilgore where Mr. Ridenaur talked about his training in eliciting confessions from people.

60.     On July 28, 2011, Mr. Ridenaur and Ms. Pollock interviewed the Plaintiff about an email the Plaintiff sent to a Kevin Madden of SES, a potential parts vendor on April, 21, 2011.

61.     The email in question concerned the pricing for repair and replacement parts for the Defendants' stores' security and fire alarms. The email informed the prospective vendor what the Defendants were currently paying for its repair and replacement parts and asked if the prospective vendor could provide the Defendants with a better price.

62.     Plaintiff's former supervisor, Mark Hicks, who trained the Plaintiff for the Alarm Specialist Supervisor position, had instructed the Plaintiff to send similar emails in order to get the Defendants the best price on store alarm repair and replacement products as early as 2007.

63.     Mr. Ridenaur characterized the Plaintiff's email to Mr. Madden as a violation of the Defendants' Confidentiality policy, despite the fact that the email was sent to a vendor for parts for the repair and maintenance of the stores' security and fire alarm systems, and not to a competitor or a supplier of merchandise sold in the Defendants' stores.

64.    On July 29, 2011, the Plaintiff met with Mr. Blum and Ms. Pollack and was terminated, purportedly for violation of company policy, violation of Defendants' Confidentiality policy, conduct detrimental to the Defendants, and loss of confidence.

65.    During the Plaintiff's unemployment benefits phone interview with Mr. Ridenaur, Mr. Ridenaur told the Plaintiff that on July 27, 2011, Mr. Barker had brought this email to Mr. Ridenaur's attention and asked that an investigation be immediately commenced.

66.    Before being terminated, the Plaintiff had an exemplary work history during her career with the Defendants.

67.    Before being terminated, the Plaintiff had never been disciplined by the Defendants.

68.    On August 3, 2011, the Plaintiff appealed her termination through the Defendants' appeal procedures.

69.    On August 24, 2011, the Defendants informed the Plaintiff that the Defendants stood by the termination decision.

70.    The Plaintiff would further state that the basis for Plaintiff's termination was pretextual, as she had previously engaged in similar behavior under the direction of management and the email in question had been sent more than fourteen weeks prior to the date the Defendants terminated the Plaintiff.

71.    At the time that the Plaintiff was terminated by the Defendants, she was earning approximately $51,700.00 a year. The Plaintiff has not found new employment since being terminated by the Defendants.

72.    On August 31, 2011 the Plaintiff timely a charge of with the Equal Employment Opportunity Commission alleging discrimination based on sex and retaliation.

73.    The Plaintiff received a Right to Sue letter on September 3, 2012, which is attached as Exhibit 1 to this Complaint. Therefore the Plaintiff has exhausted her administrative remedies.

**COUNT I**
**GENDER DISCRIMINATION**

74.    The allegations contained in Paragraphs 1-73 of the Complaint for Damages are hereby incorporated by reference herein as if so stated verbatim.

75.    At all times pertinent to this action, Plaintiff was a "person" or "employee" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §2000e.

76.    At all times pertinent to this action, Defendants were an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §2000e.

77.    Beginning in or around October of 2008 and continuing through her termination on July 29, 2011 the Plaintiff was subjected to harassment and discrimination based upon her gender by the Defendants' employees, including but not limited to the Plaintiff's supervisors and management.

78.    The Plaintiff asserts that she became pregnant in early 2009 and was subject to harassment and discrimination based upon her pregnancy by the Defendants' employees, including but not limited to the Plaintiff's supervisors and management.

79.     The Plaintiff asserts that she was treated poorly and received disparate treatment as compared to male employees who were similarly situated. Plaintiff was passed over for promotion in favor of a less qualified male candidate, was denied opportunity for training, her suggestions, ideas, contributions and decisions were constantly questioned and minimized, and she was subsequently terminated.

80.     The Plaintiff's complaints to management and human resources regarding the Defendants' discrimination and harassment were not taken seriously by the Defendants.

81.     Additionally, the Defendants failed to apply policies consistently between the Plaintiff and other similarly situated male co-workers. The Plaintiff avers that male employees received promotions, were given training opportunities at a higher rate, and were treated with more respect and civility than female employees.

82.     The Plaintiff asserts that there is a causal connection between the Defendants' poor treatment, disparate treatment, discrimination and termination and the Plaintiff's gender.

83.     The Plaintiff would aver that the Defendants' reason for her termination was pre-textual and further, the Plaintiff was terminated due to her gender.

84.     By failing to promote Plaintiff, disciplining Plaintiff and terminating Plaintiff, the Defendants discriminated against Plaintiff with respect to her terms, conditions, and privileges of employment because of or on the basis of her gender and in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §2000e.

## COUNT II
## TITLE VII RETALIATION

85.    The allegations contained in Paragraphs 1-84 of the Complaint for Damages are hereby incorporated by reference herein as if so stated verbatim.

86.    At all times pertinent to this action, Plaintiff was a "person" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §2000e.

87.    At all times pertinent to this action, Defendants were an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §2000e.

88.    Beginning in or around October of 2008 and continuing through her termination on July 29, 2012, the Plaintiff opposed a practice declared discriminatory by Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §2000e.

89.    The Plaintiff opposed gender discrimination and harassment in the workplace.

90.    The Plaintiff reported gender discrimination and harassment in the workplace to her employer, including the human resource department.

91.    The Plaintiff subsequently reported gender discrimination and harassment in the workplace to the Equal Employment Opportunity Commission on or about August 31, 2011.

92.    The Plaintiff asserts that after opposing unlawful activity, she was treated poorly and was retaliated against by a variety of measures, including but not limited to: verbal harassment and intimidation techniques, being passed over for promotion, increased job scrutiny, threats, workplace hostility, and ultimately termination.

93.    Plaintiff also reported the retaliation to the Defendants, to no avail.

94.    The Plaintiff asserts that there is a causal connection between the Defendants' retaliatory treatment and termination and the Plaintiff's engagement in practices declared discriminatory by Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §2000e.

95.    The Plaintiff would aver that the Defendants' reason for her termination was pre-textual and further, the Plaintiff was terminated in retaliation for engaging in protected activity.

96.    By passing over the Plaintiff for promotion, subjecting the Plaintiff to additional job scrutiny, and disciplining and terminating the Plaintiff, the Defendants retaliated and discriminated against the Plaintiff with respect to her terms, conditions, and privileges of employment because of or on the basis of Plaintiff's opposition to a practice declared discriminatory by Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §2000e.

## APPLICABLE TO ALL COUNTS

97.    As a result of the Defendants' culpable acts or omissions as set forth herein, the Plaintiff was improperly discriminated against, retaliated against and terminated by the Defendants and is entitled to compensation for past, present and future wages and benefits, incidental damages, compensation for emotional distress, humiliation, mental anguish, embarrassment, pain and suffering and other nonpecuniary losses.

98.    The Plaintiff has retained William A. Young, Jr. to represent her in this action and has agreed to pay a reasonable attorney's fee for his services.

99.     The Plaintiff further submits that the Defendants have acted: (a) intentionally, (b) maliciously, or (c) recklessly in terminating the Plaintiff and that the Plaintiff is entitled to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, PLAINTIFF PRAYS:

  a)  that service of process issue to Defendants as set forth in;

  b)  back pay and front pay;

  c)  pre-judgment interest;

  d)  applicable and available damages and consistent with Tenn. R. Civ. P. 8.01 and 15.02, under no circumstances shall the amount awarded by the trier of fact exceed $350,000 for compensatory damages and $350,000 for punitive damages to the Plaintiff Amanda Thomas;

  e)  reasonable attorney's fees and costs;

  f)  any other such relief, general or specific, to which the Plaintiff may be entitled;

  g)  that a jury of twelve (12) be empaneled to try this action.


Respectfully submitted,



William A. Young, Jr. BPR No. 030489
Curtis A. Runger, BPR No. 22995
Eugene G. Douglass, BPR No. 7996
2820 Summer Oaks Dr.
Bartlett, TN 38134
(901) 388-9832 phone
(901) 372-8264 fax
bartlettattorney@gmail.com

17

## VERIFICATION

STATE OF TENNESSEE                     )
                                       )
COUNTY OF SHELBY                       )

     I, Amanda L. Thomas, have read the foregoing Verified Complaint and aver that the factual allegations complained therein, except where stated otherwise, are within my personal knowledge and true and correct.

_Amanda L. Thomas_
Amanda L. Thomas

SWORN   AND   SUCBSCRIBED   TO
BEFORE   ME   on   this   29th   day   of
November, 2012, to certify which witness
my hand and my seal.

_Judy B. McKea_
Notary Public

MY COMMISSION EXPIRES:
September 21, 2016

18

**Ex. 1**

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: Amanda L. Thomas<br>4256 Mccracken Road<br>Hernando, MS 38632 | From: Memphis District Office<br>1407 Union Avenue<br>Suite 901<br>Memphis, TN 38104 |
|---|---|

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) |  |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 846-2011-79468 | Dwight V. Johnson,<br>Investigator | (901) 544-0164 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Katharine W. Kores,
Director

Enclosures(s)

AUG 3 1 2012

(Date Mailed)

cc:     Tanya Holmes
        Human Resource
        AUTOZONE
        123 S. Front St.
        Memphis, TN 38103

## CERTIFICATE OF SERVICE

I, WILLIAM A. YOUNG, JR., do hereby certify that I have forwarded a true and correct copy of the foregoing document via U.S. Certified Mail, Return Receipt Requested, postage prepaid, this the 29 day of November, 2012 to the following parties:

**AutoZone, Inc**
C/O its Registered Agent
CT Corporation System
800 S. Gay St.
Ste. 2021
Knoxville, TN 37929

**AutoZoners, LLC**
C/O its Registered Agent
CT Corporation System
800 S. Gay St.
Ste. 2021
Knoxville, TN 37929

William A. Young, Jr. (BPR #030489)
Attorney for the Plaintiff, Amanda Thomas
2820 Summer Oaks Drive
Bartlett, TN 38134
(901) 388-9832

 CT Corporation

**Service of Process Transmittal**
12/03/2012
CT Log Number 521708304



**TO:**  HARRY L GOLDSMITH
AutoZone, Inc.
123 South Front St.
Memphis, TN 38103-3607

**RE:**  **Process Served in Tennessee**

**FOR:**  AutoZoners, LLC (Domestic State: NV)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Amanda L. Thomas, Pltf. vs. Autozone, Inc. and AutoZoner, LLC, Dfts. |
| **DOCUMENT(S) SERVED:** | Letter, Summons, Verified Complaint, Verification, Exhibit, Certificate |
| **COURT/AGENCY:** | 13th Judicial District Circuit Court at Memphis, TN<br>Case # CT00503312 |
| **NATURE OF ACTION:** | Employee Litigation - Wrongful Termination - Defendants terminated the plaintiff on July 29, 2011 |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Knoxville, TN |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 12/03/2012 postmarked on 11/29/2012 |
| **JURISDICTION SERVED :** | Tennessee |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after the summons has been served upon you, not including the day of service |
| **ATTORNEY(S) / SENDER(S):** | William A. Young<br>2820 Summer Oaks Dr.<br>Barlett, TN 38134<br>901-388-9832 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  Fed Ex Standard Overnight , 794211002400<br>Email Notification, Pam Butler PAM.BUTLER@AUTOZONE.COM |
| **SIGNED:**<br>**PER:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | C T Corporation System<br>Amy McLaren<br>800 S. Gay Street<br>Suite 2021<br>Knoxville, TN 37929-9710<br>800-592-9023 |

Page 1 of  1 / JK

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

# DOUGLASS & RUNGER

ATTORNEYS AT LAW
AN ASSOCIATION OF ATTORNEYS • NOT A PARTNERSHIP

2820 SUMMER OAKS DRIVE
BARTLETT, TN 38134

EUGENE G. DOUGLASS: 901 388-5804
CURTIS A. RUNGER: 901 388-5805

FAX NUMBER: 901 372-8264
egdouglass@bellsouth.net
crunger@bellsouth.net

November 29, 2012

VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED

AUTOZONE, INC
AUTOZONERS, LLC
C/O its Registered Agent
CT CORPORATION SYSTEM
800 S. Gay St., Ste. 2021
Knoxville, TN 37929

**RE:  AMANDA L. THOMAS v. AUTOZONE, INC and AUTOZONERS, LLC**

To Whom It May Concern:

Please find attached a copy of the Verified Complaint for Damages I filed against
AutoZone, Inc. and AutoZoners, LLC in Shelby County, TN. If you have any questions
or would like to discuss this case, please contact me directly. My telephone number is
901-388-9832.

Sincerely yours,

William A. Young, Jr., Esq.

Cc: Amanda Thomas

**(CIRCUIT/CHANCERY) COURT OF TENNESSEE**
**140 ADAMS AVENUE, MEMPHIS, TENNESSEE 38103**
**FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS**

## SUMMONS IN CIVIL ACTION

Docket No. *CT-005033-12*

☐ Lawsuit
☐ Divorce

Ad Damnum $ _____

| | | |
|---|---|---|
| *Amanda L. Thomas* | **VS** | *Auto Zoners, LLC* |
| Plaintiff(s) | | Defendant(s) |

TO: (Name and Address of Defendant (One defendant per summons))

*Auto Zoners, LLC*
*c/o its Registered Agent*
*CT Corporation System*
*600 S. Gay St. Ste. 2021*
*Knoxville TN 37929*

Method of Service:
☐ Certified Mail
☐ Shelby County Sheriff
☐ Commissioner of Insurance ($)
☐ Secretary of State ($)
☐ Other TN County Sheriff ($)
☐ Private Process Server
☐ Other

($) Attach Required Fees

You are hereby summoned and required to defend a civil action by filing your answer with the Clerk of the Court and serving a copy of your answer to the Complaint on *William A. Young, Jr* Plaintiff's attorney, whose address is *2820 Summer Oaks Dr. Bartlett TN 38134* telephone *901 3889832* within THIRTY (30) DAYS after this summons has been served upon you, not including the day of service. If you fail to do so, a judgment by default may be taken against you for the relief demanded in the Complaint.

JIMMY MOORE, Clerk / DONNA RUSSELL, Clerk and Master

TESTED AND ISSUED *November 29 2012* By _____, D.C.

TO THE DEFENDANT:

NOTICE; Pursuant to Chapter 919 of the Public Acts of 1980, you are hereby given the following notice:
Tennessee law provides a four thousand dollar ($4,000) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the Clerk of the Court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed. These include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

FOR AMERICANS WITH DISABILITIES ACT (ADA) ASSISTANCE ONLY, CALL (901) 379-7895

I,  JIMMY MOORE / DONNA RUSSELL ,  Clerk of the Court,
Shelby County, Tennessee, certify this to be a true and
accurate copy as filed this

_____

JIMMY MOORE , Clerk /  DONNA RUSSELL, Clerk and Master

By: _____ , D.C.

RETURN OF SERVICE OF SUMMONS

I HEREBY CERTIFY THAT I **HAVE** SERVED THE WITHIN SUMMONS:

By delivering on the _____ day of _____ , 20_____ at _____ M. a copy of the summons

and a copy of the Complaint to the following Defendant _____

at _____

By: _____

_____
Signature of person accepting service                                Sheriff or other authorized person to serve process

---

RETURN OF NON-SERVICE OF SUMMONS

I HEREBY CERTIFY THAT I **HAVE NOT** SERVED THE WITHIN SUMMONS:

To the named Defendant _____

because _____ is (are) not to be found in this County after diligent search and inquiry for the following

reason(s): _____

This _____ day of _____ , 20_____.

By: _____
Sheriff or other authorized person to serve process

## IN THE CIRCUIT COURT OF TENNESSEE
## FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

| | |
|---|---|
| AMANDA L. THOMAS, | ) |
| Plaintiff, | ) |
| | ) No: CT-005033-12 |
| | ) Division IV |
| v. | ) JURY DEMAND (12) |
| | ) |
| AUTOZONE, INC. | ) |
| And | ) |
| AUTOZONERS, LLC. | ) |
| | ) |
| Defendants. | ) |
| | ) |

FILED NOV 2 9 2012 CIRCUIT COURT CLERK BY _____ D.C.

---

### VERIFIED COMPLAINT FOR DAMAGES

---

TO THE HONORABLE JUDGES OF THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE:

COMES NOW, the Plaintiff, Amanda L. Thomas, by and through her undersigned counsel, and for her Verified Complaint for Damages against the Defendants would state as follows:

### JURISDICTION AND VENUE

1.    The Plaintiff, Amanda L. Thomas, (hereinafter "Plaintiff") is a resident and citizen of Hernando, DeSoto County, Mississippi.

2.    The Defendants, AutoZone, Inc., and AutoZoners, LLC, (hereinafter "Defendants") are foreign corporations authorized to be and doing business in

Memphis, Shelby County, Tennessee, wherein the allegations set forth in this complaint occurred.    The Defendants may be served by and through their registered agent, C T Corporation System, 800 S. Gay St., Ste. 2021, Knoxville, Tennessee, 37929.

3.      Jurisdiction in this matter is proper because the events giving rise to this matter took place in Memphis, Shelby County, Tennessee, at the Defendants' facility located at 123 S. Front St. Memphis, TN 38103.

## FACTS

4.      The Defendants are corporate entities that operate a nationwide automotive parts and accessories retail store chain that employs fifteen (15) or more employees.

5.      The Plaintiff is a married thirty-six (36) year old Caucasian female.

6.      The Plaintiff began her employment with the Defendants on or about March 15, 2004 as a Central Station Alarm Coordinator in the Defendants' Loss Prevention department.

7.      The Defendants terminated the Plaintiff on July 29, 2011.

8.      At the time of her termination, the Plaintiff was employed as an Alarm Specialist Supervisor.

9.      When the Plaintiff was terminated, she was the only female supervisor in Defendants' Loss Prevention department.

10.      In or around October of 2008, the Defendants placed Patrick Barker into the Central Station Manager position in the Loss Prevention department.

2

11.     Beginning with Mr. Barker's arrival in 2008 and continuing through the Plaintiff's termination in July of 2011, the Plaintiff was singled out and subjected to a hostile workplace, sexual harassment, and gender discrimination perpetrated by Mr. Barker, which included sexually suggestive comments, sexually explicit comments, discriminatory comments, and crude comments.

12.     Beginning in 2009, Mr. Barker publicly and repeatedly called the Plaintiff "hormonal" while the Plaintiff was pregnant and made other derogatory comments related to the Plaintiff's pregnancy's effect on her productivity and decision making ability.

13.     At all times relevant as set forth herein, the sexual harassment from Mr. Barker was so severe and pervasive, traumatic, continuous and repetitive, as to create a hostile work environment which affected the terms, conditions, and/or privileges of the Plaintiff's employment with the Defendants.

14.     The discriminatory conduct which occurred frequently during the Plaintiff's employment by the Defendants was so severe in nature and was so humiliating, traumatic, embarrassing and offensive that it unreasonably interfered with the Plaintiff's work performance.

15.     In the workplace, Mr. Barker called into question and minimized all of the Plaintiff's suggestions, ideas, contributions and decisions, even though he was not the Plaintiff's direct supervisor.

16.     Mr. Barker publicly referred to the Plaintiff as "my secretary" and made other disparaging and derogatory comments about her.

3

17.    Mr. Barker made public comments about the Plaintiff's suggestions, ideas, contributions and decisions in ways that linked them to the Plaintiff's gender, such as "oh that's a female thing. That's a woman thing. Ya'll just think like that" and "you must be on your rag."

18.    When the Plaintiff was subjected to sexual harassment and discrimination, the Plaintiff rejected and discouraged said inappropriate conduct.

19.    On numerous occasions between October 2008 and July 2011, the Plaintiff reported Mr. Barker's unwanted conduct verbally and in writing to numerous supervisors and Human Resources personnel employed by the Defendants, including but not limited to Director Chuck Bryant, Manager Mark Hicks, Director Jerry Blum, Manager Kelly Kilgore, Human Resources Director David Orabone, Human Resources Manager Hannah Wesson and Human Resources Generalist Ashley Pollock.

20.    The Defendants knew that the Plaintiff was uncomfortable with the hostile work environment, yet the Defendants refused to cease the inflammatory actions.

21.    On one occasion in or around June of 2009, the Plaintiff complained to her supervisor Mr. Hicks that Mr. Barker was berating her workplace decision-making ability on the basis of her gender and pregnancy status, and Mr. Hicks said "well you are pregnant so by definition you are hormonal."

22.    Despite the Plaintiff's numerous written and verbal complaints to multiple managers, supervisors, directors and Human Resources personnel, no action was ever taken against Mr. Barker by the Defendants.

23.    Similarly, no action was taken by the Defendants to keep Mr. Barker away from the Plaintiff.

24.    Instead, the Defendants assigned Mr. Barker to be the Plaintiff's professional mentor.

25.    Mr. Hicks, the Plaintiff's supervisor in early 2010, recommended that the Plaintiff attend the Defendants' SSC New Manager Training Program, which lasted approximately from April to June of 2010.

26.    As part of the SSC New Manager Training Program, the Plaintiff was assigned Mr. Barker as the Plaintiff's professional mentor.

27.    The Plaintiff was uncomfortable being paired with Mr. Barker and requested a different mentor, both to Human Resources specialist Hannah Wesson and Director Chuck Bryant.

28.    Despite the Plaintiff's request to be assigned a new mentor, no new mentor was assigned, and the Plaintiff was forced to continue with Mr. Barker as her mentor in order to complete the SSC New Manager Training Program.

29.    The Plaintiff would further state that she suffered disparate treatment from her co-workers as a result of reporting a hostile workplace, sexual harassment and gender discrimination as other employees were not treated in the same manner.

30.    In June of 2010, Mr. Bryant announced his plan to fill the position vacated by Security Systems Manager Mark Hicks. Mr. Bryant knew of the Plaintiff's interest in the position, which was a more desirable position than the Plaintiff's, encouraged her to apply. Mr. Bryant pulled the Plaintiff into the L3 security room and told the Plaintiff that this was "a private discussion between friends, not

director and employee" and that although he felt the Plaintiff could "do the job," he was concerned about the "dumb hillbilly act." Mr. Bryant said he knew the Plaintiff was smarter than she acted and that if she didn't "reel in the hillbilly nonsense, she would be an embarrassment to the department as a manager which would in turn embarrass him." Before the Plaintiff was allowed to leave, Mr. Bryant told the Plaintiff to never speak of their conversation.

31.    The Plaintiff understood the conversation with Mr. Bryant as criticism on the Plaintiff's gender as well as the Plaintiff's appearance, and she cut her hair short and purchased new clothes.

32.    In July of 2010, the Plaintiff applied for a Security Systems Manager position within her department.

33.    In August of 2010, the Plaintiff interviewed with Mr. Bryant, Ms. Pollock, and Mr. Cary Mills for the Security Systems Manager position she applied for in July of 2010.

34.    In September of 2010, the Defendants awarded the Security Systems Manager position to Kelly Kilgore, a less qualified male employee.

35.    Mr. Kilgore came from Defendants' Maintenance Department, had less of a background in the Defendants' burglar and fire alarm systems than the Plaintiff, had not completed Defendants' SSC New Manager Training Program, had no college degree, and had been employed by the Defendants for three fewer years than the Plaintiff.

36.    Director Chuck Bryant and HR specialist Ashley Pollock told the Plaintiff that she did not get the Security Systems Manager position that went to Mr.

Kilgore because she "needed a female mentor." They did not say why the Plaintiff needed a female mentor.

37.     Within Defendants' Loss Prevention department, the employees were overwhelmingly male.  The Plaintiff was the only female in a supervisory or managerial role in the alarm services department of Loss Prevention. Besides the Plaintiff, the only two female employees in the department were Adrienne Fullwood, who the Plaintiff supervised, and Christine McGoldrick, who was the department secretary.

38.     On or about September 2010, after Mr. Kilgore got the Security Systems Manager position, the Plaintiff was assigned a new mentor, Human Resources Manager Hannah Wesson.

39.     Prior to Mr. Kilgore receiving the Security Systems Manager position, the Plaintiff had never been told by anyone that she needed a female mentor in order to receive a promotion.

40.     The Plaintiff met with Ms. Wesson monthly and told Ms. Wesson about Mr. Barker's constant hostility, harassment and discrimination.

41.     Ms. Wesson told the Plaintiff at one of these meetings, "I know, but I will help you get through it. You know how men are. We just have to deal with it."

42.     The Plaintiff was also subjected to a hostile workplace, sexual harassment, and discrimination perpetrated by Mr. Kilgore, the individual who received the job the Plaintiff applied for and did not receive. Mr. Kilgore publicly made derogatory, gender-based comments about the Plaintiff and other women.

43.     Each and every time the Plaintiff was subjected to sexual harassment and discrimination by Mr. Kilgore, the Plaintiff rejected and discouraged said inappropriate conduct.

44.     In January 2011, the Plaintiff confided in an employee outside of the alarm services department about the difficulties she was having with sexual harassment, hostile workplace and discrimination with in the Loss Prevention department. The employee the Plaintiff confided in anonymously filed a report with AutoZoner Relations.

45.     On the basis of the anonymous complaint made to AutoZoner Relations, a Human Relations investigation was initiated in approximately February 2011.

46.     Human Resources Director David Orabone and Human Resources Generalist Ashley Pollock went to the Loss Prevention department and interviewed the Plaintiff about the anonymous complaint in February 2011. Because Mr. Orabone and Ms. Pollock went to Loss Prevention to request a meeting with the Plaintiff, other members of the Loss Prevention department were aware the Plaintiff was meeting with Human Resources representatives.

47.     Mr. Orabone told the Plaintiff that she would not be fired or retaliated against for cooperating with the investigation and that the investigation was confidential.

48.     The Plaintiff described to Mr. Orabone and Ms. Pollock the hostile work environment and constant harassment and discrimination she had been enduring from Mr. Barker and Mr. Kilgore.

8

49.     Several days later, Ms. Pollock told the Plaintiff that the investigation was complete but did not reveal the outcome of the investigation.

50.     Subsequently, the Plaintiff was subjected to increased job performance scrutiny by her supervisors, including Mr. Blum, Mr. Barker and Mr. Kilgore.

51.     In or around late February of 2011, the Plaintiff was summoned by Director Jerry Blum into Libby Rabun's office. Mr. Blum demanded to know why HR was investigating the alarm services department. The Plaintiff told Mr. Blum that the investigation was confidential and that she could not discuss it. Mr. Blum told the Plaintiff that if she did not tell him what was going on, the Plaintiff was a liar.     The Plaintiff broke down in tears and told Mr. Blum about the HR investigation. The Plaintiff told Mr. Blum that she cooperated with HR because she had previously discussed her problems with Mr. Barker and Mr. Kilgore with Mr. Blum and Mr. Blum had done nothing about it. Mr. Blum was furious about the HR investigation and the Plaintiff's cooperation with HR. Mr. Blum told the Plaintiff to keep this conversation between the Plaintiff and Mr. Blum and to come see Mr. Blum, not HR, from now on.

52.     In April of 2011, the Plaintiff applied for a lateral position, Import Quality Compliance Coordinator, in another company department in an attempt to escape the workplace hostility that existed in the Loss Prevention department. Mr. Kilgore, Mr. Blum and Mr. Barker knew the Plaintiff applied for this position. The Plaintiff was not chosen for this position. The Plaintiff was told that an outside candidate with more experience in the merchandising field was selected for the position.

53.    The Plaintiff's job duties as Alarm Specialist Supervisor included maintaining a database of over seven hundred (700) vendors for Alarm Services as well as negotiating vendor contracts needed to implement and maintain the Defendants' store security systems.

54.    In May of 2011, the Plaintiff asked Mr. Kilgore to communicate his and Mr. Blum's expectations for the Plaintiff and her team. She never got a response from Mr. Kilgore.

55.    The Plaintiff continued to receive conflicting instructions and commands from Mr. Kilgore, Mr. Blum, and Mr. Barker.

56.    At the Plaintiff's request, the Plaintiff met with Mr. Kilgore and Mr. Blum to discuss expectations on how the Plaintiff should deal with vendors in the future and chain of command issues.

57.    On July 22, 2012 the Plaintiff met with Mr. Kilgore and complained about the continuing discrimination, harassment and hostility from Mr. Barker. The Plaintiff asked Mr. Kilgore "when is someone was going to stop Mr. Barker" and Mr. Kilgore told her that he agreed that Mr. Barker was a problem and had been a problem for as long as Mr. Kilgore had been in the department. Mr. Kilgore told the Plaintiff to keep their conversation confidential.

58.    On July 26, 2011 and at the Plaintiff's request, the Plaintiff met with Mr. Kilgore, Mr. Blum, and Mr. Barker. At this meeting, the department's financial problems were discussed. The Plaintiff brought back up her request for expectations and chain of command issues and also discussed problems caused by inexperienced personnel, including Adrienne Fullwood, she was forced by Mr.

Bryant to hire onto her team. During this meeting, Mr. Barker became upset and stormed out of the room.

59. On July 27, 2011, Keith Ridenaur, Loss Prevention investigator, led a meeting with the Plaintiff, Mr. Barker, and Mr. Kilgore where Mr. Ridenaur talked about his training in eliciting confessions from people.

60. On July 28, 2011, Mr. Ridenaur and Ms. Pollock interviewed the Plaintiff about an email the Plaintiff sent to a Kevin Madden of SES, a potential parts vendor on April, 21, 2011.

61. The email in question concerned the pricing for repair and replacement parts for the Defendants' stores' security and fire alarms. The email informed the prospective vendor what the Defendants were currently paying for its repair and replacement parts and asked if the prospective vendor could provide the Defendants with a better price.

62. Plaintiff's former supervisor, Mark Hicks, who trained the Plaintiff for the Alarm Specialist Supervisor position, had instructed the Plaintiff to send similar emails in order to get the Defendants the best price on store alarm repair and replacement products as early as 2007.

63. Mr. Ridenaur characterized the Plaintiff's email to Mr. Madden as a violation of the Defendants' Confidentiality policy, despite the fact that the email was sent to a vendor for parts for the repair and maintenance of the stores' security and fire alarm systems, and not to a competitor or a supplier of merchandise sold in the Defendants' stores.

64.     On July 29, 2011, the Plaintiff met with Mr. Blum and Ms. Pollack and was terminated, purportedly for violation of company policy, violation of Defendants' Confidentiality policy, conduct detrimental to the Defendants, and loss of confidence.

65.     During the Plaintiff's unemployment benefits phone interview with Mr. Ridenaur, Mr. Ridenaur told the Plaintiff that on July 27, 2011, Mr. Barker had brought this email to Mr. Ridenaur's attention and asked that an investigation be immediately commenced.

66.     Before being terminated, the Plaintiff had an exemplary work history during her career with the Defendants.

67.     Before being terminated, the Plaintiff had never been disciplined by the Defendants.

68.     On August 3, 2011, the Plaintiff appealed her termination through the Defendants' appeal procedures.

69.     On August 24, 2011, the Defendants informed the Plaintiff that the Defendants stood by the termination decision.

70.     The Plaintiff would further state that the basis for Plaintiff's termination was pretextual, as she had previously engaged in similar behavior under the direction of management and the email in question had been sent more than fourteen weeks prior to the date the Defendants terminated the Plaintiff.

71.     At the time that the Plaintiff was terminated by the Defendants, she was earning approximately $51,700.00 a year. The Plaintiff has not found new employment since being terminated by the Defendants.

12

72.    On August 31, 2011 the Plaintiff timely a charge of with the Equal Employment Opportunity Commission alleging discrimination based on sex and retaliation.

73.    The Plaintiff received a Right to Sue letter on September 3, 2012, which is attached as Exhibit 1 to this Complaint. Therefore the Plaintiff has exhausted her administrative remedies.

### COUNT I
### GENDER DISCRIMINATION

74.    The allegations contained in Paragraphs 1-73 of the Complaint for Damages are hereby incorporated by reference herein as if so stated verbatim.

75.    At all times pertinent to this action, Plaintiff was a "person" or "employee" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §2000e.

76.    At all times pertinent to this action, Defendants were an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §2000e.

77.    Beginning in or around October of 2008 and continuing through her termination on July 29, 2011 the Plaintiff was subjected to harassment and discrimination based upon her gender by the Defendants' employees, including but not limited to the Plaintiff's supervisors and management.

78.    The Plaintiff asserts that she became pregnant in early 2009 and was subject to harassment and discrimination based upon her pregnancy by the Defendants' employees, including but not limited to the Plaintiff's supervisors and management.

13

79. The Plaintiff asserts that she was treated poorly and received disparate treatment as compared to male employees who were similarly situated. Plaintiff was passed over for promotion in favor of a less qualified male candidate, was denied opportunity for training, her suggestions, ideas, contributions and decisions were constantly questioned and minimized, and she was subsequently terminated.

80. The Plaintiff's complaints to management and human resources regarding the Defendants' discrimination and harassment were not taken seriously by the Defendants.

81. Additionally, the Defendants failed to apply policies consistently between the Plaintiff and other similarly situated male co-workers. The Plaintiff avers that male employees received promotions, were given training opportunities at a higher rate, and were treated with more respect and civility than female employees.

82. The Plaintiff asserts that there is a causal connection between the Defendants' poor treatment, disparate treatment, discrimination and termination and the Plaintiff's gender.

83. The Plaintiff would aver that the Defendants' reason for her termination was pre-textual and further, the Plaintiff was terminated due to her gender.

84. By failing to promote Plaintiff, disciplining Plaintiff and terminating Plaintiff, the Defendants discriminated against Plaintiff with respect to her terms, conditions, and privileges of employment because of or on the basis of her gender and in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §2000e.

14

## COUNT II
## TITLE VII RETALIATION

85.    The allegations contained in Paragraphs 1-84 of the Complaint for Damages are hereby incorporated by reference herein as if so stated verbatim.

86.    At all times pertinent to this action, Plaintiff was a "person" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §2000e.

87.    At all times pertinent to this action, Defendants were an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §2000e.

88.    Beginning in or around October of 2008 and continuing through her termination on July 29, 2012, the Plaintiff opposed a practice declared discriminatory by Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §2000e.

89.    The Plaintiff opposed gender discrimination and harassment in the workplace.

90.    The Plaintiff reported gender discrimination and harassment in the workplace to her employer, including the human resource department.

91.    The Plaintiff subsequently reported gender discrimination and harassment in the workplace to the Equal Employment Opportunity Commission on or about August 31, 2011.

92.    The Plaintiff asserts that after opposing unlawful activity, she was treated poorly and was retaliated against by a variety of measures, including but not limited to: verbal harassment and intimidation techniques, being passed over for promotion, increased job scrutiny, threats, workplace hostility, and ultimately termination.

93.     Plaintiff also reported the retaliation to the Defendants, to no avail.

94.     The Plaintiff asserts that there is a causal connection between the Defendants' retaliatory treatment and termination and the Plaintiff's engagement in practices declared discriminatory by Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §2000e.

95.     The Plaintiff would aver that the Defendants' reason for her termination was pre-textual and further, the Plaintiff was terminated in retaliation for engaging in protected activity.

96.     By passing over the Plaintiff for promotion, subjecting the Plaintiff to additional job scrutiny, and disciplining and terminating the Plaintiff, the Defendants retaliated and discriminated against the Plaintiff with respect to her terms, conditions, and privileges of employment because of or on the basis of Plaintiff's opposition to a practice declared discriminatory by Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §2000e.

## **APPLICABLE TO ALL COUNTS**

97.     As a result of the Defendants' culpable acts or omissions as set forth herein, the Plaintiff was improperly discriminated against, retaliated against and terminated by the Defendants and is entitled to compensation for past, present and future wages and benefits, incidental damages, compensation for emotional distress, humiliation, mental anguish, embarrassment, pain and suffering and other nonpecuniary losses.

98.     The Plaintiff has retained William A. Young, Jr. to represent her in this action and has agreed to pay a reasonable attorney's fee for his services.

99.     The Plaintiff further submits that the Defendants have acted: (a) intentionally, (b) maliciously, or (c) recklessly in terminating the Plaintiff and that the Plaintiff is entitled to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, PLAINTIFF PRAYS:

      a)     that service of process issue to Defendants as set forth in;

      b)     back pay and front pay;

      c)     pre-judgment interest;

      d)     applicable and available damages and consistent with Tenn. R. Civ. P. 8.01 and 15.02, under no circumstances shall the amount awarded by the trier of fact exceed $350,000 for compensatory damages and $350,000 for punitive damages to the Plaintiff Amanda Thomas;

      e)     reasonable attorney's fees and costs;

      f)     any other such relief, general or specific, to which the Plaintiff may be entitled;

      g)     that a jury of twelve (12) be empaneled to try this action.

Respectfully submitted,

William A. Young, Jr. BPR No. 030489
Curtis A. Runger, BPR No. 22995
Eugene G. Douglass, BPR No. 7996
2820 Summer Oaks Dr.
Bartlett, TN 38134
(901) 388-9832 phone
(901) 372-8264 fax
bartlettattorney@gmail.com

17

## VERIFICATION

STATE OF TENNESSEE            )
                             )
COUNTY OF SHELBY             )

      I, Amanda L. Thomas, have read the foregoing Verified Complaint and aver that the factual allegations complained therein, except where stated otherwise, are within my personal knowledge and true and correct.

*Amanda L. Thomas*

Amanda L. Thomas

SWORN AND SUCBSCRIBED TO BEFORE ME on this 29th day of November, 2012, to certify which witness my hand and my seal.

*Judy B. McKee*

Notary Public

MY COMMISSION EXPIRES:
September 21, 2016

18

**Ex. 1**

EEOC Form 161 (11/09)                    U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Amanda L. Thomas<br>4256 Mccracken Road<br>Hernando, MS 38632 | From: | Memphis District Office<br>1407 Union Avenue<br>Suite 901<br>Memphis, TN 38104 |
|---|---|---|---|

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) |  |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 846-2011-79468 | Dwight V. Johnson,<br>Investigator | (901) 544-0164 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

| | |
|---|---|
| ☐ | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
| ☐ | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
| ☐ | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| ☐ | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| ☒ | The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge. |
| ☐ | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
| ☐ | Other (briefly state) |

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Enclosures(s)                    Katharine W. Kores,                    AUG 3 1 2012
                                 Director                              (Date Mailed)

cc:      Tanya Holmes
         Human Resource
         AUTOZONE
         123 S. Front St.
         Memphis, TN 38103

## CERTIFICATE OF SERVICE

I, WILLIAM A. YOUNG, JR., do hereby certify that I have forwarded a true and correct copy of the foregoing document via U.S. Certified Mail, Return Receipt Requested, postage prepaid, this the  $27$  day of November, 2012 to the following parties:

**AutoZone, Inc**
C/O its Registered Agent
CT Corporation System
800 S. Gay St.
Ste. 2021
Knoxville, TN 37929

**AutoZoners, LLC**
C/O its Registered Agent
CT Corporation System
800 S. Gay St.
Ste. 2021
Knoxville, TN 37929

William A. Young, Jr. (BPR #030489)
Attorney for the Plaintiff, Amanda Thomas
2820 Summer Oaks Drive
Bartlett, TN 38134
(901) 388-9832